(No. 31462.—

Rosehill Cemetery Company, Appellant, *vs.* Arthur C. Lueder, Auditor of Public Accounts, *et al.*, Appellees.

*Opinion filed September 21, 1950.*

ASHCRAFT & ASHCRAFT, of Chicago, (CARROLL J. LORD, and RUFUS D. BEACH, of counsel,) for appellant.

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and JAMES C. MURRAY, all of Chicago, of counsel,) for appellees.

NORMAN P. JONES, and JAMES B. MARTIN, both of Springfield, *amici curiae.*

Mr. JUSTICE GUNN delivered the opinion of the court:

Rosehill Cemetery Company, a corporation, filed a complaint in the circuit court of Cook County against the Auditor of Public Accounts, and the Attorney General of the State of Illinois, and other parties, praying for a declaratory judgment to declare what rights or obligations, if any, the Cemetery Care Act of the State of Illinois, (Ill. Rev. Stat. 1947, chap. 21, pars. 64.1 to 64.24,) imposed upon it, and for a judgment declaring all perpetual care funds under its control, or deposited in the future, might be invested as heretofore, and to construe said Cemetery Care Act as not applying to the plaintiff; or, in the alternative, if held to apply to the plaintiff, and to its investments either past, present or future, it be declared void for a number of reasons, which cause it to violate the constitution of Illinois, and for an injunction against the Auditor of Public Accounts and the Attorney General from proceeding against plaintiff for failure to comply with said act.

The Attorney General and the Auditor of Public Accounts made a motion to strike upon the grounds that the complaint did not set forth anything to entitle the plaintiff to the relief prayed; and upon consideration of said motion the court allowed the same, and dismissed the complaint of the plaintiff for want of equity. The defendant Chicago Title and Trust Company filed an answer and cross complaint, but upon its own motion the cross complaint was dismissed without prejudice. Since the constitutionality of the act was directly involved and passed upon by the circuit court, the appeal comes directly to this court.

The complaint, which is rather lengthy, alleges that plaintiff was created by a special act of the General Assembly of Illinois on February 11, 1859. Briefly, such act authorized the corporation to acquire not to exceed five hundred acres of land in Lake View Township, Cook

County, and to arrange for the disposal of burial lots on terms of permanent care, as might be agreed upon between it and the purchaser. In 1863, another special act of the legislature gave plaintiff the right to create a trust fund, by the collection of ten per cent of the proceeds of the sale of lots until it amounted to the sum of $100,000, which fund was to be kept and preserved for "all time to come" for maintaining and ornamenting the grounds, lots, memorials and other structures in the cemetery, so that they could continue as a cemetery ground forever.

The complaint further alleged that said fund now has therein more than $100,000; that said plaintiff also erected a mausoleum containing rooms and crypts for the burial of the dead, which contains over twenty-five hundred bodies, and that into such fund there had been created, from donations and bequests, deposits which aggregate $381,000, and that the total of the perpetual care fund under the first mentioned act has at the present time a value in excess of $2,700,000.

The complaint alleges that the act of July 21, 1947, designated as the Cemetery Care Act (Ill. Rev. Stat. 1947, chap. 21, secs. 64.1 to 64.24,) provides, among other things, that any cemetery coming within the provisions of the act, which is authorized to accept funds and hold them in perpetuity for the care of lots or graves, is required to invest the funds in a certain manner, and be under the supervision of the Auditor of Public Accounts, and to comply with certain requirements of said act, or be liable to certain penalties provided therein.

Without reciting all of the other allegations contained in the complaint, it is the contention of plaintiff that the act does not in its terms embrace cemeteries organized as plaintiff, under the special act of 1859, and the amendment thereof in 1863, and seeks the declaratory judgment of the court to so hold, or, in the alternative to declare said Cemetery Care Act void. The allegations of the complaint

and its amendments also show that the General Assembly at the same session of 1947 amended certain other general statutes relating to those cemeteries that had authority to create perpetual care trusts, to comply with the Cemetery Care Act of 1947. It also alleges that the Auditor of Public Accounts is claiming the right to supervise not only the investments already made by it, but all investments in the future, and all perpetual-care contracts or agreements which have been consummated, or those that will be executed in the future; and that the Attorney General will proceed to enforce said act unless it is held invalid, or it is held by this court that the plaintiff does not come within the terms of said Cemetery Care Act; and sets forth many details of its manner of transacting business, the character of its investments, and its proceedings under existing laws relating to investments, and prays the relief set out above.

The defendants made a motion to strike the complaint upon the ground it failed to state a cause of action; that the Cemetery Care Act was intended by the legislature to apply to the plaintiff and similarly situated cemetery societies; that the Cemetery Care Act was an exercise of the police power of the State, which properly applied to the plaintiff even though it was organized under a special act, and that there was no valid constitutional objection to the validity of the law, and that the complaint is in other ways insufficient and stated no cause of action.

The issue raised by the complaint and the motion to strike, which was allowed by the court, presents several questions. It is to be observed that the plaintiff's main claim is that the Cemetery Care Act, when properly construed, does not apply to it, or to any of its perpetual care investments. This involves a study of the special acts under which the plaintiff was created and operates, and likewise, the provisions of the Cemetery Care Act. These questions do not necessarily involve the validity, but only the application of the Cemetery Care Act. The alternative

claim is that the Cemetery Care Act is unconstitutional and void for the several reasons set out in the complaint, if it is held to apply to the plaintiff.

We will not consider the first contention because the constitutionality of an act will not be passed upon by this court unless the validity of a statute is necessarily involved, and a proper determination of the issues raised requires a decision upon that question. *People ex rel. Patterson* v. *Long,* 297 Ill. 194; *People* v. *Small,* 319 Ill. 437; *Ossey* v. *Retail Clerks' Union,* 326 Ill. 405; *People ex rel. Yohnka* v. *Kennedy,* 367 Ill. 236.

We will first consider the vital provisions of the special act of 1859 incorporating the plaintiff. Section 1 provides that the eighteen named individuals, and others they may hereafter associate with them, are created a body politic and corporate by the name of Rosehill Cemetery Company, and for perpetual succession and for other corporate powers. Section 2 provides for a board of managers and other matters pertaining to the conduct of business. Section 3 provides for the acquiring of land and the disposal thereof. Section 4, which is the foundation of certain claims of appellant, we set out in full.

"Sec. 4. The said managers and their successors shall have authority to lay out and ornament, for cemetery purposes, such grounds as they may acquire as aforesaid; to make and have recorded in the Recorder's office of Cook County, a plat of such grounds and of such additions thereunto as they may make at any time, and the filing of such plat for record, shall operate as a legal vacation of any former plat or subdivision of the same, and of any roads or alleys passing through the same, also erect such buildings, tombs, enclosures or other structures as they may deem advisable; to arrange and dispose of burial lots on such terms and with such conditions for the permanent care and preservation of the cemetery, or any part thereof, as they may agree upon with the purchasers. To make

such bylaws and regulations relative to the election and duties of managers and their successors; the appointment of officers and agents, and their several duties and compensations; and to make such rules and regulations, from time to time, for the government of lot holders and visitors to the cemetery as they may deem necessary."

Section 5 provides that the properties shall be free from taxation, and exempt from execution. Section 6 is a regulatory provision. Section 7 provides that the corporation may take and hold any grant, donation or bequest of property upon trust, to apply the same or the income under the directions of the managers for the improvement of the cemetery, or the protection or preservation of any monument, tomb or gravestone, or for the planting of trees and shrubs in and around any cemetery lot, according to the terms of the grant or bequest. The remaining sections have no relevancy to this case.

The general tenor of the amendment by the act of 1863 has been described above, but section 13 provides that it shall become a part of the charter of the company when the board of managers has voted to accept the act as a part of its charter and shall sign a certificate, together with the executive officers of the company, under the corporate seal, recording same with the recorder of Cook County.

It is claimed that the provisions of the special charter of the plaintiff under the acts of 1859 and 1863 are not affected by the Cemetery Care Act, because to give it such effect would (a) impair the charter rights of plaintiff, contrary to the constitutions of the United States and of the State of Illinois; (b) because the special act of 1859 granted plaintiff an irrevocable, contractual right to receive the funds, and hold the same in perpetual trust for the permanent care of the cemetery and the graves therein, which was not amended or repealed by the Cemetery Care Act of 1947; nor (c) did it revoke the right of plaintiff

to receive and hold perpetual-care funds, pursuant to its charter.

The particular parts of the Cemetery Care Act of 1947 which relate to the issue are as follows: Section 1 consists entirely of definitions, and, so far as the present question is concerned, only one is important, *viz.*, "cemetery authority," which is defined to mean "any person, firm, corporation, trustee, partnership, association or municipality owning, operating, controlling or managing a cemetery or holding land for burial grounds or burial purposes." There can be no doubt but that appellant comes within this definition. Section 3 grants authority to a "cemetery authority" to accept a gift or bequest, or receive money by contract, to hold in trust in perpetuity for the care of the cemetery and the graves therein, and defines in what manner the fund shall be invested and managed. Section 6 provides that such funds shall be exempt from taxation or from the statutes of mortmain or the laws against perpetuities and accumulations. Section 7 provides for the procuring of a license from the Auditor of Public Accounts. Section 8 makes provision for issuing the license and other regulations. The other sections, some fifteen in number, are regulatory or penal, with the exception of section 22, which provides the act shall not be construed to impair the obligation of any existing contract. Section 25 makes the act effective January 1, 1948.

There is no express repeal of any former statute contained in the Cemetery Care Act, and the question now for consideration is whether its provisions are of such a character that it necessarily repeals by implication any provisions of the said special statute creating Rosehill Cemetery Company. As a general rule repeals by implication are not favored. (*Village of Glencoe* v. *Hurford,* 317 Ill. 203; *Brotherhood of Railroad Trainmen* v. *Elgin, Joliet and Eastern Railway Co.* 382 Ill. 55; *Caruthers* v. *Fisk University,* 394 Ill. 151.) An implied repeal results

from some enactment the terms and necessary operation of which cannot be harmonized with the terms and necessary effect of an earlier act, and therefore the last expression of law prevails, since it cannot be supposed that the law-making power intends to contradict and enforce laws which are contradictions. It is also essential that the implication, to be operative, must be necessary, and, if it arises out of repugnancy between two acts, the later abrogates the earlier one to the extent that it is inconsistent and irreconcilable with it, but a later and older statute will, if possible and reasonable to do so, be always construed together, so as to give effect not only to distinct parts or provisions of the older law not inconsistent with the new law, but to give it effect as a whole, subject only to restrictions or modifications, when such seems to have been the legislative purpose. *People ex rel. Mathews* v. *Board of Education,* 349 Ill. 390; *People* v. *Shader,* 326 Ill. 145; *Schneider* v. *Board of Appeals,* 402 Ill. 536.

In accordance with this general rule it has been many times held that the earlier statute continues in force unless the two are clearly inconsistent and repugnant with each other, or unless in the later statute some express notice is taken of the former, plainly indicating an intention to repeal it. And, where two acts are seemingly repugnant they should, if possible, be so construed that the later will not operate as a repeal of the former by implication. (*Jensen* v. *Fricke,* 133 Ill. 171; *County of Cook* v. *Gilbert,* 146 Ill. 268; *Rich* v. *City of Chicago,* 152 Ill. 18; *People ex rel. Brummet* v. *Moeckel,* 256 Ill. 598.) Where two acts or parts of the same act are seemingly repugnant they should be so construed, if possible, that both may stand. *People* v. *Shader,* 326 Ill. 145; *Anderson* v. *City of Park Ridge,* 396 Ill. 235.

The rule just announced applies to general statutes which appear to be in conflict, but there is another rule of statu-

tory construction applicable when the later act is a general one, and it is contended that it repeals by implication a former special or local law, in which situation it is an established rule of construction that where two statutes treat of the same subject, one being special and the other general, unless they are irreconcilably inconsistent, the latest in date will not be held to have repealed the former, but the special will prevail in its application to the subject matter as far as coming within its particular provisions. (*Covington* v. *City of East St. Louis*, 78 Ill. 548; *People ex rel. Board of Education* v. *Mayor of Bloomington*, 130 Ill. 406; *Kuenster* v. *Board of Education*, 134 Ill. 165; *Trausch* v. *County of Cook*, 147 Ill. 534; *Village of Ridgway* v. *County of Gallatin*, 181 Ill. 521.) The rule is strongly stated in *People ex rel. Hoyne* v. *Sweitzer*, 266 Ill. 459, as follows: "It is only in cases where a statute is expressly repealed or where all cases are removed from under its operation, and the statute is thereby entirely abrogated by a later act, that the former act is repealed by the later one." Approved in *People ex rel. Palmer* v. *National Life Insurance Co.* 367 Ill. 35; *Peoria and Eastern Railway Co.* v. *Wright*, 377 Ill. 626.

An examination of the charter statute of appellant discloses it is authorized to carry on its business and care for its property perpetually. It is given perpetual succession. It is authorized by the charter to receive funds or property by devise, grant or contract, to be used for the *permanent care and preservation* of the grounds and graves. It is exempt from taxation, and the special sum derived from the sale of lots is to be kept for all time to come, so that the cemetery may continue *forever*.

From this language it is difficult to reach any conclusion but that the act of 1859 and its amendment authorized the receipt of gifts for perpetual care and contracts therefor, although the term "perpetual" was not used. Where

an institution is given perpetual life and authority to erect monuments, graves and crypts for the dead, and to receive funds for permanent care, the latter term used in connection with the life of the corporation, which is perpetual, and the burial place of a man, clearly imply perpetuity, both from the declared term of the existence of the corporation, as well as by reference to a place for the eternal repose of the dead. This meaning is amplified by the amendment, which provides for the embellishing of the cemetery for all *time to come,* so that the cemetery *will exist forever,* both of which terms are synonymous with the term "perpetual." Since the amendment is a part of the charter, the terms "all time to come," and "existence forever," give explicit meaning to the word "permanent" used in the original charter. We entertain no doubt that the plaintiff's charter entitled it to enter into contracts for the perpetual care of graves, monuments, crypts, and mausoleums, similar to those authorized specifically in the Cemetery Care Act.

Under section 3 of the Cemetery Care Act, *any* cemetery authority is "authorized and empowered to accept" gifts, etc., and to hold the same in trust and perpetuity. And, further, section 3 provides that the trust funds authorized by "this section" shall be invested as provided by the Probate Act, and also, that funds "authorized by this section" may be commingled, etc. And, again, in sections 6, 7, 8, 9 and 12, there is the constant use of the limiting phrase with respect to funds "authorized by the provisions of section 3," indicating that it is only those funds which are taken by virtue of the authority given by the Cemetery Care Act that are controlled by its provisions. It is to be noted it does not require all "cemetery authorities" to accept gifts or receive grants thereunder. The authority is permissive, not mandatory. Certainly the funds already invested by appellant were not authorized by the Cemetery Care Act, and there are no words in the act which indicate

that it was intended to apply to cemeteries which already had the power to invest perpetual-care funds.

This conclusion finds support when we examine the various statutes for the operation of cemeteries by cities, townships, private corporations and individuals, contained in chapter 21 of the Illinois statute, and it is noted that the legislature, on the same day the Cemetery Care Act was enacted, amended some statutes so as to require compliance with the new act, and left others unaffected thereby. Thus, paragraphs 21.1, 32, 39 and 64 of chapter 21, (Ill. Rev. Stat. 1947, chap. 21,) by amendments for such purpose, require four separate acts concerning cemeteries to comply with the Cemetery Care Act. All of the acts thus amended concerned cemeteries that were authorized to establish perpetual care trusts, and to make investments as provided either by ordinance or the laws pertaining to trustees. These cemeteries did not make investments as "authorized by section 3" of the Cemetery Care Act, and, hence, were required to do so by amending the law which authorized their establishment.

On the other hand, the act enabling cities and villages to establish and regulate cemeteries (Ill. Rev. Stat. 1949, chap. 21, pars. 4 to 6,) authorized the creation of perpetual care trusts, and the management and investment of such funds as may be established by ordinance. This statute is not amended to require compliance with the Cemetery Care Act. These amendments and omission to amend existing cemetery statutes, as well as the explicit language of the latter act, manifest an intention upon the part of the General Assembly to confine the operation of the Cemetery Care Act to those cemetery authorities empowered to receive funds under section 3 of such act, and those created under other acts which are specifically required by amendment to do so. Appellant does not come within either class.

We do not see any irreconcilable conflict between the special laws of 1859 and 1863, which control the actions

of appellant, and the provisions of the Cemetery Care Act. We do not understand that the Rosehill Cemetery Company would be prohibited from making application to be "authorized under section 3" of the Cemetery Care Act, but the statute does not require that it must so apply, and, since it did have the authority by a prior statute to create perpetual care trusts, there can be no inconsistency in both statutes being in effect at the same time. There are many instances where this has occurred, and it has been often stated that if two acts can be reconciled so they can both be given effect it is the duty of the courts to so construe them. The case of *Trausch* v. *County of Cook*, 147 Ill. 534, presents a good example. There Northwestern University had been created by a special act of the legislature, and that act made it a penal offense to sell intoxicating liquors within four miles of its location. A later general statute was enacted which granted the village of West Ridge, which was within the restricted area, the right to regulate the sale of liquor, and it was held that, although by general law the village was given the power to permit the sale of liquor, yet it was not authorized to violate the law providing for the restriction in the charter of Northwestern University, since it did not operate as a repeal of the special law by implication.

In *County of Cook* v. ·*Gilbert*, 146 Ill. 268, the question presented was whether the county had a right, under a general act relating to counties, to require the sheriff to apply to a certain officer of the county for supplies and help in dieting prisoners in the county jail. The sheriff had been given the power by a separate statute enacted many years before to feed and care for prisoners, and it was held that both acts could stand, and that the older act was not repealed by implication by the later act. A number of other illustrations may be found in the cases holding a special law is not repealed by implication by a later general law. *People ex rel. Hoyne* v. *Sweitzer*, 266 Ill. 459;

*People ex rel. Palmer* v. *National Life Insurance Co.* 367 Ill. 35.

Rosehill Cemetery Company has by its charter been given rights which have been recognized by this court on many occasions. Its charter has been referred to as a contract in *Town of Lake View* v. *Rosehill Cemetery Co.* 70 Ill. 191; *People* v. *Rosehill Cemetery Co.* 334 Ill. 555; *Rosehill Cemetery Co.* v. *City of Chicago,* 366 Ill. 207; *People* v. *Rosehill Cemetery Co.* 371 Ill. 510. And it has also been held that its rights were not changed by the adoption of the constitution of 1870. *Rosehill Cemetery Co.* v. *City of Chicago,* 352 Ill. 11.

It has been specifically held by this court in *Village of Hyde Park* v. *Oakwoods Cemetery Ass'n,* 119 Ill. 141, that a similar cemetery association created by a special act of the legislature, which act provided that no roads should be opened through the cemetery without consent of the association, was not repealed by implication by a general act authorizing the village to lay out and vacate streets within its corporate limits, and the general principles, referred to above, followed.

The General Assembly must have been cognizant of the powers of appellant and other cemeteries created by special acts of the legislature, and if it was its intention to limit the powers of the Rosehill Cemetery Company, or to repeal in part the provisions of the act of its incorporation, some reference would have been made to same, or other action taken, as was done in the case of the other cemetery acts referred to above.

We are forced to the conclusion that the Cemetery Care Act does not, and was not intended to, repeal by implication the provisions of the legislative charter of Rosehill Cemetery Company with respect to the management, control and investment of its funds for perpetual care or other uses either now in existence, or those in the future, unless it voluntarily elects to come within the provisions of the

Cemetery Care Act. This conclusion makes it unnecessary and improper to discuss the many constitutional questions argued in the briefs.

We might add that *amici curiae* have filed a supporting brief questioning the validity of the Cemetery Care Act, but since they have limited their brief to constitutional questions, and it is not necessary to decide such a question between the parties to the present case, we do not feel justified in discussing constitutional questions involving the validity of a statute as affecting parties who are not present in court.

It is our conclusion that the decree of the circuit court of Cook County was erroneous. It is therefore our order that the decree of the circuit court of Cook County be, and the same is, reversed, and the cause is remanded with directions to proceed in a manner consistent with the views expressed herein.

*Reversed and remanded, with directions.*